IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

NICOLE D. BROWN                                                    PLAINTIFF

VS.                              CIVIL NO. 06-2176

MICHAEL J. ASTRUE[1], COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                    DEFENDANT

## MEMORANDUM OPINION

Nicole Brown ("plaintiff"), brings this action pursuant to § 205(g) of the Social Security Act

("the Act"), 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of

the Social Security Administration denying her applications for disability insurance benefits ("DIB")

and supplemental security income ("SSI") under Titles II and XVI of the Act.

## Background:

The applications for DIB and SSI now before this court were filed on August 16, 2004,

alleging an onset date of March 29, 2004, due to osteoarthritis in the knees, shoulder, and feet, as well

as depression and anxiety.  (Tr. 12, 106-107, 116-117).  An administrative hearing was held on March

1, 2006.  (Tr. 336-374).  Plaintiff was present and represented by counsel.

The ALJ issued a written decision on June 1, 2006,  finding that, although severe within the

meaning of the Regulations, plaintiff's impairments did not meet or medically equal an impairment

contained in the Listing of Impairments in Appendix 1 to Subpart P of Regulations No. 4.  (Tr. 241).

The ALJ then determined that plaintiff retained the residual functional capacity ("RFC") to lift and

carry 25 pounds frequently and 50 occasionally; stand and walk about 6 hours during an 8 hour

---

[1]Michael J. Astrue became the Social Security Commissioner on February 12, 2007.  Pursuant to Rule
25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue has been substituted for Commissioner Jo
Anne B. Barnhart as the defendant in this suit.

workday; and, sit 2 hours during an 8 hour workday.  (Tr. 25).  Due to mental limitations, the ALJ

also concluded that plaintiff could perform work where the interpersonal contact require is incidental

to the work performed, the complexity of the tasks performed is learned by rote with few variables

and little judgment, and the supervision required is simple, direct, and concrete.  (Tr. 25).  With the

assistance of a vocational expert ("VE"), the ALJ then concluded that plaintiff could perform work

as a dump truck driver, hand packer, kitchen helper, and assembler.  (Tr. 24).

At the time of the ALJ's decision, plaintiff was twenty-nine years old and possessed a tenth

grade special education.  (Tr. 12).  The record reveals that she has PRW as a certified nurse's assistant

in a nursing home.  (Tr. 12).

On September 22, 2006, the Appeals Council declined to review this decision.  (Tr. 3-5).

Subsequently, plaintiff filed this action.  (Doc. # 1).  This case is before the undersigned by consent

of the parties.  Although both parties were afforded an opportunity to file appeal briefs, plaintiff has

chosen not to do so.  The case is now ready for decision.

### Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by

substantial evidence on the record as a whole.  *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir.

2002).  Substantial evidence is less than a preponderance but it is enough that a reasonable mind

would find it adequate to support the Commissioner's decision.  The ALJ's decision must be affirmed

if the record contains substantial evidence to support it.  *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th

Cir. 2003).  As long as there is substantial evidence in the record that supports the Commissioner's

decision, the Court may not reverse it simply because substantial evidence exists in the record that

AO72A
(Rev. 8/82)

would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits:  (1) whether the claimant has engaged in substantial gainful activity since filing her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in

light of his or her residual functional capacity.  *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's RFC assessment.  RFC is the most a person can do despite that person's limitations.  20 C.F.R. § 404.1545(a)(1).  A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004).  "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

The evaluation of a mental impairment is often more complicated than the evaluation of a claimed physical impairment.  *Andler v. Chater,* 100 F.3d 1389, 1393 (8th Cir. 1996).  Evidence of symptom-free periods, which may negate the finding of a physical disability, do not compel a finding that disability based on a mental disorder has ceased.  *Id*.  Mental illness can be extremely difficult to predict, and remissions are often of "uncertain duration and marked by the impending possibility of relapse." *Id.*  Individuals suffering from mental disorders often have their lives structured to

4

minimize stress and help control their symptoms, indicating that they may actually be more impaired than their symptoms indicate. *Hutsell v. Massanari,* 259 F.3d 707, 711 (8th Cir.2001); 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.00(E) (1999). This limited tolerance for stress is particularly relevant because a claimant's residual functional capacity is based on their ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *McCoy v. Schweiker,* 683 F.2d 1138, 1147 (8th Cir. 1982) (abrogated on other grounds).

Records reveal that plaintiff has been diagnosed with depression and panic disorder and prescribed medication. (Tr. 136-166, 183, 215-220, 224, 229, 240, 266-272, 297-313, 318). She sought consistent treatment for these impairments and reported experiencing odd phobias. (Tr. 318). In fact, at the administrative hearing, plaintiff testified that she believed people were after her. (Tr. 360-361). Further, she stated that she had attempted to injure her first and second husbands with a knife. (Tr. 362).

In 1985, plaintiff underwent a psychological evaluation with Kathy Clark. (Tr. 132-135). Testing revealed that she was suffering from a learning disability which manifested itself in basic reading, reading comprehension, and written expression. These results indicated that plaintiff may have difficulty in reading comprehension due to poor knowledge on which to draw as well as poor attention to detail; low visual retention as well as low auditory attention which are needed for both visual and auditory approaches to reading; and, difficulty in visual perceptual skills limiting her ability to distinguish between spaces in letters in handwriting as well as in reading and to distinguish words. Testing also determined that plaintiff was functioning within the upper portion of the

borderline range of intellectual functioning. (Tr. 132). In addition, Ms. Clark indicated that plaintiff

was suffering from depression and low self-esteem. (Tr. 135).

On October 8, 2004, Dr. Robert Spray performed a mental status evaluation of plaintiff. (Tr.

217-220). According to his report, plaintiff appeared to be very anxious, shaking her knee during the

entire session; distressed; and, even tearful at times. She reported that she had trouble working

because people got on her nerves. Plaintiff said, "[w]hen they scream and holler, I just out and pop

em." She also stated that she had previously been admitted for in-patient psychiatric care due to

homicidal ideations. Plaintiff indicated that she had become "aggravated and want[ed] to kill [her]

mother." Further, plaintiff reported that she had "tried to kill" her first husband. (Tr. 218).

Dr. Spray estimated plaintiff's I.Q. to be between 71 and 79 and diagnosed her with social

phobia, dysthymia, provisional borderline mental retardation, and histrionic and avoidant personality

traits. (Tr. 219). He rated her concentration as mildly to moderately impaired with adequate

persistence and pace. Further, Dr. Spray noted problems with functional academics, social

functioning, and limited domestic responsibilities. As such, he found her level of adaptive

functioning to be consistent with a diagnosis of borderline mental retardation and concluded that she

could not manage funds without assistance. (Tr. 220).

On January 14, 2005, plaintiff underwent a mental status examination with Dr. Denise

LaGrand. (Tr. 266-272). Plaintiff indicated that she was applying for disability due to ADD,

depression, anxiety, and osteoarthritis. She indicated that she was currently receiving her treatment

from the Good Samaritan Clinic. Dr. LaGrand noted plaintiff's speech was minimal, her vocabulary

was adequate, she appeared to understand verbal instructions, her thoughts were vague, her thought

AO72A
(Rev. 8/82)

content was appropriate, and she did not appear to be responding to unusual internal stimuli. Current suicidal ideation was present without a plan or specific intent. Dr. LaGrand determined that plaintiff's capacity for associative thinking and verbal concept formation was average but her judgment was poor. She estimated plaintiff's I. Q. to be between 71 and 79, falling into the category of borderline intellectual functioning. Dr. LaGrand diagnosed plaintiff with generalized anxiety disorder and assessed her with a global assessment of functioning score of 45. As for her adaptive functioning, plaintiff's ability to concentrate was found to be below average and she was noted to be easily distracted. Plaintiff did not report any difficulty with dressing, preparing food, or performing household chores. However, she did complain of problems with personal hygiene, eating an adequate diet, shopping, and driving. Accordingly, Dr. LaGrand concluded that plaintiff's level of functioning was consistent with a diagnosis of borderline intellectual functioning. She also determined that plaintiff would need assistance with funds. Dr. LaGrand indicated that plaintiff's combination of physical and mental symptoms led to a greater impairment and made her less likely to be successful in a job setting. She stated that plaintiff's ability to handle the stress of a work setting; deal with supervisors and co-workers; and, understand, remember, and carry out instructions was below average. Further, her barriers to employment were said to include anxiety and social problems. Dr. LaGrand was of the opinion that plaintiff would have difficulty functioning in most work settings. (Tr. 272).

On April 14, 2005, Dr. LaGrand completed a mental RFC assessment. (Tr. 287-288). She rated plaintiff's ability to understand, remember, and carry out detailed instructions and maintain attention as fair to poor; her ability to maintain concentration for extended periods of time, sustain

an ordinary routine without special supervision, complete a normal workday or workweek, and interact appropriately with the public as poor; and, her ability to remember locations and work-like procedures, perform activities within a schedule, maintain regular attendance, be punctual, work with or near others without being distracted by them, make simple work-related decisions, perform at a consistent pace, ask simple questions or request assistance, accept instructions and respond appropriately to criticism from supervisors, get along with co-workers and peers, maintain socially appropriate behavior, respond appropriately to changes in the work setting, travel in unfamiliar places or use public transportation, and set realistic goals or make plans independently of others as merely fair. (Tr. 287-288).

The ALJ dismissed these assessments stating that "many of the conclusions reached about the claimant's functioning, (including the GAF score) were based solely on the responses of Ms. Brown which are not always reliable, as it is to her advantage to portray herself as very limiting with deficits in her ability to function." (Tr. 21). We do not, however, agree. As is evidenced by the assessments contained in the file, the evaluation results were based on plaintiff's scores on a battery of psychological and intellectual tests, designed to weed out malingerers and those individuals who were over reporting in an effort to obtain benefits. The assessments were also based on the psychologist's personal impression of the plaintiff. Therefore, we do not find that the ALJ properly considered the psychological assessments of record. As Dr. LaGrand concluded that plaintiff's GAF was only 45, which is indicative of serious symptoms or a serious impairment in social, occupational, or school functioning, we believe that this matter should be remanded to the ALJ for further consideration. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS IV-TR 34 (4th ed. 2000).

8

The record also suggests that plaintiff was functioning in the mildly mentally retarded to borderline intellectual range. However, the record does not contain the results of actual I. Q. testing. As such, we believe that the ALJ erred in failing to order intellectual testing of the plaintiff. On remand, he is directed to do so. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

**Conclusion:**

Based on the foregoing, we reverse the ALJ's decision and remand this case to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

ENTERED this 9th day of August 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)